# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 6902 | **DATE** | 1/11/2012 |
| **CASE TITLE** | Jordan vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

The Court grants Defendants' motion in limine #1 to exclude the expert testimony of Mr. Andrew Hall [88].

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

    Defendants have moved to bar the testimony of Plaintiff's expert, Mr. Andrew Hall, pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Federal Rules of Evidence 702, 401, and 403. For the following reasons, the Court grants Defendants' motion.

### BACKGROUND

    Plaintiff Bianca Jordan, as guardian of Delbert Van Allen, a minor, brought this lawsuit based on an October 31, 2008 incident at 6922 South Aberdeen Street in Chicago, Illinois involving Defendant Chicago Police Officers O'Shaughnessy and Rigan and the shooting of Van Allen. (R. 50, Am. Compl. ¶¶ 9-12.) Plaintiff brings excessive force, false arrest, malicious prosecution, and battery claims.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence ("Rule") 702 and the Supreme Court's opinion in *Daubert*. *Bielskies v. Louisville Ladder, Inc.*, --- F.3d ----, 2011 WL 5829771, at *4 (7th Cir. Nov. 18, 2011). "The Federal Rules of Evidence define an 'expert' as a person who possesses 'specialized knowledge' due to his 'skill, experience, training, or education' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Banister v. Burton*, 636 F.3d 828, 831 (7th Cir. 2011) (quoting Fed. R. Evid. 702). District courts must determine whether expert testimony is both relevant and reliable. *Bielskis*, 2011 WL 5829771, at *4. To do so, courts must "ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting Fed. R. Evid. 702); *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011) ("[E]xpert testimony is admissible if (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case."). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

As the Seventh Circuit instructs, "'[t]he focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate.'" *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). In assessing whether an expert's testimony is reliable, *Daubert* lists a number of considerations — including testing, peer review, error rates, and acceptability in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. The 2000 Advisory Committee's Notes to Rule 702 suggest additional criteria for gauging expert reliability, including whether: (1) "maintenance standards and controls" exist; (2) the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation," or was developed "expressly for purposes of testifying"; (3) "the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; (4) "the expert has adequately accounted for obvious alternative explanations"; (5) "the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and (6) "the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give." *See Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 534-35 (7th Cir. 2005) (citations omitted), *vacated in part on other grounds*, 448 F.3d 936 (7th Cir. 2000) (quoting Fed. R. Evid. 702 advisory committee's note (2000)); *see also Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

The Supreme Court, however, has clearly stated that "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141, 119 S. Ct. 1167 (internal quotation omitted). This is especially true when the expert's opinions are non-scientific in nature and do not follow traditional scientific testing. "[T]he test for reliability for nonscientific experts is 'flexible' and . . . *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999) (quoting *Kumho Tire*, 536 U.S. at 141). "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (emphasis in original); *see also Ortiz*, 656 F.3d at 536.

An expert may be qualified to render opinions based on experience alone. "In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Advisory Committee Notes to Rule 702. The Seventh Circuit has stated repeatedly that "genuine expertise may be based on experience or

training." *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (quoting *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996)). "[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Trustees of Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Sav. Plan Trust Funds v. Royal Intern. Drywall and Decorating, Inc.*, 493 F.3d 782, 787-88 (7th Cir. 2007) (citations and quotations omitted); *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (emphasis in original) (quoting Fed. R. Evid. 702). As such, courts "consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Trustees of Chicago*, 493 F.3d at 788 (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

## ANALYSIS

**I.    Mr. Hall's Qualifications and Opinions**

Mr. Hall graduated from the Federal Bureau of Investigation National Academy and holds a Master's Degree in Human Resources and Organization Development from the University of San Francisco. He spent 29 years in the City of Westminster, California's Police Department, during which time he served as a police sergeant, general detective sergeant, narcotics & vice sergeant, and Adjutant to the Chief of Police. In connection with these positions, he participated in the planning and execution of at least 100 search warrants and he was involved in most major operations of the police department. As the Adjutant, he worked in the Chief of Police's office during a controversial, high-profile, officer-involved shooting that led to a federal civil rights lawsuit against the department. He also served as a lieutenant in the role of patrol watch commander and administrative services commander. In his role as administrative services commander, he oversaw complaints of officer misconduct and conducted complex internal affairs investigations. He also oversaw personnel functions, including recruitment, selection, hiring, and training of police officers. After serving as a lieutenant, he was appointed to captain and served in that role for seven years. He commanded investigations and administrative divisions, and he oversaw the operations division. Next, he served as the Chief of Police for seven and a half years until his retirement in January 2010.

Though he has not actively practiced law in over 10 years, Mr. Hall is also a licensed attorney in the State of California. He has spoken at local, state, and national conferences on over 50 occasions, mostly pertaining to the topic of community policing in ethically and culturally diverse communities. He has served as a testifying expert witness in four matters, including this one, and he has served as a consulting expert witness in one other matter. Mr. Hall also teaches a course in police community relations at Golden West Community College.

Mr. Hall's report states that Plaintiff's attorney retained him "to review materials in this case and formulate opinions as to the reasonableness of officer conduct in accordance with commonly accepted standards and practices in Law Enforcement." (R. 88-1, Hall Report at 4.) At his deposition, Mr. Hall testified that Plaintiff's attorney gave him two versions of facts – the Plaintiff's and the Defendants' – and told Mr. Hall that he would "have to review the materials [his] self and come to [his] own conclusions." *See* 2/9/2011 Hall Deposition ("Hall Dep.") at 15:14-16:9. Mr. Hall's report provides that it "focuses on significant events occurring before, during and shortly after the officer-involved shooting of Delbert Van Allen (4-7-94), on October 31, 2008, and specifically addresses the author's opinion on discrepancies in the testimony of five key parties who were either involved in the event or a percipient witness to it." (*Id.* at 5.) Mr. Hall summarizes his "findings" in his expert report as follows:

> 1.    I find the testimony of Sgt. James Buhrke, Officer Thomas O'Shaughnessy and Officer Kristopher Rigan to be <u>significantly less credible</u> than the testimony of Arrestee Delbert Van Allen or witness

Vince Hinton.

2.  In making this finding, I am consequentially led to the conclusion that the officer-involved shooting of Delbert Van Allen was not reasonable or justified under the facts and circumstances known to the officers in this matter.

3.  In making this finding, I am consequentially led to the conclusion that the charging of Delbert Van Allen with the criminal offense of Assault on a Police Officer, and subsequent prosecution of that charge, was unjustified and wholly lacking in probable cause.[1]

*Id.* at 5 (emphasis in original).

## II. Mr. Hall's Opinions Are Inadmissible Because They Invade the Province of, and Will Not Assist, the Jury

Defendant argues that Mr. Hall's opinions are inadmissible because they are intertwined inextricably with, and rest entirely on, improper credibility determinations. (R. 88 at 3-7.) Plaintiff, on the other hand, contends that although Mr. Hall's report "makes repeated references to credibility, the essence of his opinions relates to the reasonableness of the officers' actions leading up to and following the shooting of Van Allen, including the lack of evidence of chain of custody of the paintball gun at issue." (R. 109 at 3.) He admits that experts cannot testify as to credibility determinations, *per se*, but contends that experts may base their opinions on a version of events which is assumed to be true as long that version is supported by the evidence. *See id.* (citing *Richman v. Sheahan*, 415 F. Supp.2d 929, 943 (N.D. Ill. 2006)). In sum, Plaintiff acknowledges that Mr. Hall's opinions regarding witness credibility are inadmissible, but he contends that the remainder of Mr. Hall's opinions are admissible because they are based on factual assumptions that are supported by the evidence. (R. 109 at 5.)

It is well-settled that determining the weight and credibility of witness testimony is the exclusive province of the jury and that experts are not permitted to offer opinions as to the believability or truthfulness of that testimony. *See United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) ("the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury–determining the credibility of witnesses") (citation omitted); *see also United States v. Scheffer*, 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ("Determining the weight and credibility of witness testimony. . . has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'") (citing *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S.Ct. 720, 35 L.Ed. 371 (1891)). Mr. Hall's opinions are at odds with this well-accepted principle and therefore must be stricken.

As Plaintiff concedes, Mr. Hall's opinions as to whether he believes or disbelieves certain witness testimony are clearly inadmissible.[2] *See Hall*, 165 F.3d at 1107; *see also Davis v. Duran*, No. 08-C-6314, 2011

---

[1] Mr. Hall further states that had he "instead concluded the officer's testimony was more credible than Delbert Van Allen or witness Vince Hinton," he would have also concluded that 1) "the officer's actions were reasonable and justified under the facts and circumstances known to them"; and 2) "the criminal prosecution of Delbert Van Allen was reasonable and justified under the facts and circumstances." (R. 88-1 at 5.)

[2] Examples of such opinions from Mr. Hall's report include, but are not limited to, the following: "I find the testimony of Sgt. James Buhrke, Officer Thomas O'Shaughnessy and

WL 2277645, at *7 (N.D. Ill. June 10, 2011) ("An expert witness may not usurp the jury's function to weigh evidence and make credibility determinations.") (citation omitted). Relying on *Richman v. Sheahan*, Plaintiff argues that the remainder of Mr. Hall's opinions are admissible because they are not credibility determinations *per se*, but are rather expert opinions based on Plaintiff's version of the facts. (R. 109 at 3 (citing *Richman*, 415 F. Supp.2d at 943)).

In *Richman*, the plaintiff sought to exclude expert testimony on the ground that the experts made impermissible credibility determinations. 415 F. Supp.2d at 941. The court first determined that the experts "specifically commented on the credibility of the witnesses" and that they "based their opinions on a general acceptance of the defendants' version of the events." *Id.* As here, the court excluded the experts' credibility commentary, finding that it constituted a "usurpation of the jury's role." *Id.* at 942. The court continued on to address the question of "whether the experts should be precluded from giving opinions on matters within their admitted competence merely because the opinions are based on a general acceptance of the defendants' version of the encounter with [the plaintiff]." *Id.* In doing so, the court distinguished between an "expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine," holding that the "former is manifestly improper" but the "latter is not." *Id.* Because the experts' remaining testimony in *Richman* merely gave an opinion based upon factual assumptions (i.e., the defendants' version of the events), the court determined that it was admissible. *Id.* at 943-44.

Plaintiff's argument mischaracterizes the opinions in Mr. Hall's report and ignores the fact that Plaintiff's attorney specifically told Mr. Hall that he would have to review the materials and "come to [his] own conclusions" about which version of the facts he believes. (Hall Dep. at 16:3-9.) Plaintiff's attorney did not instruct Mr. Hall to assume that Plaintiff's version of the facts is true for the purposes of his opinion, but rather explicitly instructed him to make credibility determinations. As further discussed below, all of Mr. Hall's opinions are clearly based upon and intertwined with the credibility determinations Plaintiff's counsel asked him to make. As such, Plaintiff's reliance on *Richman* is not helpful to his argument.

In contrast to the experts in *Richman*, Mr. Hall did not merely render his opinions based factual assumptions or Plaintiff's version of the events.[3] Instead, Mr. Hall devotes 16 pages of his 21-page report[4] to

---

Officer Kristopher Rigan to be <u>significantly less credible</u> than the testimony of Arrestee Delbert Van Allen or witness Vince Hinton." (page 5) (emphasis in original); "Van Allen's description of events has a ring of credibility to it because it is made during a statement against his own self-interest" (page 10); "[o]nce again, Van Allen's description of events sounds more credible" (page 11); and "Rigan's heightened alarm due to visual confirmation seems inconsistent with his previous assertions" (page 12).

[3] Although Mr. Hall's opinion regarding the lack of evidence of a chain of custody for the paintball gun appears at first glance to be based on a factual assumption, a more thorough evaluation reveals that such opinion is inadmissible because Mr. Hall discusses it only in the context of determining whether the officers are telling the truth. *See* R. 88-1 at 19 (concluding that Plaintiff's and Mr. Hinton's testimony is significantly more credible than the officers' testimony because, among other things, "the case reports are stunningly bereft of information regarding the chain of custody of the paintball gun"). The same goes for his discussion of the action/reaction theory on page 8 of his report. *See* R. 88-1 at 9 (after discussing the action/reaction theory, stating that he "probably would not have attached any particular importance to this whole issue **but for** Van Allen's testimony that the officer who chased him

recounting in detail and evaluating witness testimony and other evidence in order to opine as to which witnesses' recollection of events on October 31, 2008 he believes is true. *See*, *e.g*., R. 88-1 at 5 ("This report focuses on significant events occurring before, during and shortly after the officer-involved shooting of Delbert Van Allen (4-7-94), on October 31, 2008, and specifically addresses the author's opinion on discrepancies in the testimony of five key parties who were either involved in the event or a percipient witness to it."); at 8 ("From this point on, Van Allen and the officers continue to relate very different versions of events. Before discussing them further; however, there are some other issues which should be discussed first because they influence the credibility and believability of these different versions."); at 19 ("Overall, in light of the testimony offered by the officers, Vince Hinton and Van Allen himself, I find the generally consistent and detailed recollections of Vince Hinton and Van Allen to be *significantly more credible* than the testimony of the officers involved for the following    reasons . . . .") (emphasis in original); at 20 (stating that "[t]here is a final issue that further affects the credibility of the officer's statements regarding the location where the handgun was found" and continuing on to recount various testimony regarding such issue). A review of his deposition transcript further indicates that Mr. Hall did not simply accept Plaintiff's version of the facts as true for the purposes of his opinion. *See* Hall Dep. at 15:14-16:9 (when asked whether Plaintiff's counsel gave him a version of facts in the matter, Mr. Hall testified that Plaintiff's counsel told him that "[t]he officers say this. My client, who I obviously believe, said this. *But you'll have to review the materials yourself and come to your own conclusions*.") (emphasis added); at 21: 8-13 (affirming that the "Conclusion" section of his expert report lists all of the reasons why he found the testimony of Hinton and Van Allen to be significantly more credible than the testimony of Officers Rigan and O'Shaughnessy and Sergeant Buhrke).

       Based on his credibility determinations, Mr. Hall "consequentially" reaches the conclusions that the officer-involved shooting of Van Allen was "not reasonable or justified under the facts and circumstances known to the officers in this matter" and that the charging and prosecution of Van Allen for assault on a police officer was "unjustified and wholly lacking in probable cause." (R. 88-1 at 5; Hall Dep. at 23:15-24:1.) It is simply not feasible to extract non-credibility opinions from the credibility opinions in Mr. Hall's report given that the entire report is premised on his evaluation of which witnesses are believable. His conclusions, therefore, are inextricably intertwined with his credibility determinations and are not, as Plaintiff suggests, merely based on factual assumptions.

       In case there was any doubt, Mr. Hall further recounts his reliance on his initial credibility determinations in reaching the remainder of his opinions by stating in his report that "[h]ad I instead concluded the officer's testimony was more credible than Delbert Van Allen or witness Vince Hinton, I would have also concluded [that the officer's actions were reasonable or that the prosecution of Van Allen was reasonable and justified under the circumstances]." *Id.* In other words, his opinions rise and fall with his credibility determination. Had he reached the opposite decision regarding the witnesses' credibility, his opinions would be the opposite of those in his report. This, as Defendants point out, is the precise determination that the jury must make. Therefore, it is an improper expert opinion under Rule 702 and *Daubert*. *See Davis*, 2011 WL 2277645, at *7 ("[E]xpert witnesses are not allowed to sort out possible conflicting testimony or to argue the implication of those consistencies. That

---

      (Rigan) exited the police car with his (Rigan's) gun drawn" and concluding that he "formed the opinion [that] Van Allen's description of events appeared to be more credible than the officer's") (emphasis in original).

       [4] Approximately three of the remaining pages list Mr. Hall's qualifications and one page sets forth the materials he reviewed before rendering his opinions.

is the role of the lawyer, and it [is] for the jury to draw its own conclusions from the testimony it hears.").[5]

### III. Mr. Hall's Reasonableness and Probable Cause Opinions Are Also Inadmissible Because They Are Improper Legal Conclusions

Mr. Hall's reasonableness and probable cause opinions are also subject to exclusion because they constitute legal conclusions. "When an expert offers an opinion regarding the application of a legal standard," such as probable cause, "an expert's role is limited to describing sound professional standards and identifying departures from them." *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997). Experts may not draw legal conclusions. *Id.* It is the role of the judge, not experts, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence. *See Davis*, 2011 WL 2277645, at *8 (citing *Panter v. Marshall Field & Co.*, 646 F.2d 271, 294 n.6 (7th Cir. 1981)); *see also Good Shepard Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible") (internal citations omitted).

Mr. Hall proffers the opinion that "the officer involved shooting of Delbert Van Allen was not reasonable or justified under the facts and circumstances known to the officers in this matter." (R. 88-1 at 5.) The sole basis for this opinion is Mr. Hall's determination that Plaintiff and Mr. Hinton are more credible than the Defendant officers. *See* R. 88-1 at 5 ("Had I instead concluded the officer's testimony was more credible than Delbert Van Allen or witness Vince Hinton, I would have also concluded the officer's actions were reasonable and justified under the facts and circumstances known to them."). Therefore, Mr. Hall's opinion does not describe sound professional standards and identify departures from them. *See West*, 114 F.3d at 652. Rather, it impermissibly draws legal conclusions based on improper credibility determinations. At trial, the Court will instruct the jury that in order to succeed on his excessive force claim, Plaintiff must prove that Defendant O'Shaughnessy used "unreasonable force" against him. *See* Seventh Circuit Pattern Civil Jury Instruction 7.08.[6] The Court will further instruct the jury that, in making such determination, it must decide whether the Defendant officers' use of

---

[5] In addition to being inadmissible under Rule 702, Mr. Hall's opinions are also inadmissible under Rule 403, which permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger" of, among other things, unfair prejudice and misleading the jury. *See* Fed.R.Civ.P. 403; s*ee also Nimely v. City of New York*, 414 F.3d 381, 397-98 (2d Cir. 2005) (the probative value of expert testimony regarding the credibility of witnesses at trial is substantially outweighed by the danger of unfair prejudice in that the expert may improperly validate witness testimony).

[6] The Court has not yet ruled regarding final jury instructions in this matter.

force was "unreasonable from the perspective of a reasonable officer facing the same circumstances that the officers faced." *Id.* at 7.09. Mr. Hall's proffered opinion suggests to the jury his interpretation of what is reasonable under the law, and it also impermissibly tells the jury which result to reach.[7]

Likewise, Mr. Hall's opinion that "the charging of Delbert Van Allen with the criminal offense of Assault on a Police Officer, and subsequent prosecution of that charge, was unjustified and wholly lacking in probable cause" is also an inadmissible legal conclusion. In order to prove his malicious prosecution claim, Plaintiff must prove, among other things, that there was no probable cause for the proceeding against him. *See Gauger v. Hendle*, 954 N.E.2d 307, 326 (Ill. App. Ct. 2d Dist. 2011) (citing *Swick v. Liautaud*, 169 Ill.2d 504, 512, 215 Ill. Dec. 98, 662 N.E.2d 1238 (1996)). At trial, the Court will instruct the jury as to the definition of "probable cause." Indeed, the parties submitted a joint probable cause jury instruction. *See* R. 115-1 at 17. Mr. Hall's probable cause opinion usurps the role of the judge to instruct the jury on the law (i.e., what constitutes probable cause under Illinois law) as well as the jury (i.e., to determine whether the evidence shows that probable cause to arrest and charge Plaintiff existed). Accordingly, it is inadmissible.[8]

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion in limine to exclude the expert testimony of Andrew Hall.

---

[7] Contrary to Plaintiff's argument, *Richman* does not necessitate a different conclusion. There, the court allowed an expert to testify that a defendant acted "reasonably" and "appropriately." 415 F. Supp.2d at 946. After recognizing that a number of courts have excluded such testimony on the grounds that it constitutes a legal conclusion, *id.* at 946 n.7, the court went on to allow it, reasoning that the expert did not state a "naked conclusion," but instead explained the reasons underlying his ultimate conclusion. *Id.* at 946-49. Here, in contrast, the sole support for Mr. Hall's reasonableness opinion is inadmissible credibility determinations.

[8] Because the Court excludes Mr. Hall's opinions in their entirety based on Defendants' credibility and legal conclusion arguments, the Court need not consider Defendants' alternative arguments that Mr. Hall's opinions are irrelevant and lack a reliable basis. *See, e.g.*, *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 2550623, at *6 (N.D. Ill. June 27, 2011) (declining to consider alternative ground for exclusion after determining that exclusion of testimony was appropriate on another ground).