IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIANCA JORDAN, as Guardian of ) <br> DELBERT VAN ALLEN, a Minor, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY CHICAGO, a municipal Corporation, ) <br> Officer Thomas O'Shaughnessy ) <br> (Star # 19271) and Officer ) <br> Christopher Rigan (Star # 15589), ) <br> ) <br> Defendants. ) | Case No. 08 C 6902 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff has moved to bar the testimony of Defendants' expert, Mr. Richard Ernest, pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Federal Rules of Evidence 702, 402, and 403. Plaintiff has also moved in limine to bar Mr. Ernest from using mannequins, and photographs of mannequins, at trial. For the following reasons, the Court grants Plaintiff's *Daubert* motion in part and denies it in part, and denies Plaintiff's motion in limine.

### BACKGROUND

Plaintiff Bianca Jordan, as guardian of Delbert Van Allen, a minor, brought this lawsuit based on an October 31, 2008 incident at 6922 South Aberdeen Street in Chicago, Illinois involving Defendant Chicago Police Officers O'Shaughnessy and Rigan and the shooting of Van Allen. (R. 50, Amend. Compl. ¶¶ 9-12.) She alleges that Van Allen, a minor, was at his grandmother's home in South Chicago on the night of October 31, when a police squad car

pulled up and stopped in front of the property. (*Id.* ¶ 9.) She further avers that Officers O'Shaughnessy and Rigan got out of the car, chased Van Allen without legal justification, and shot him three times without legal justification. (*Id.* ¶¶ 10-11.) The Complaint also alleges that Officers O'Shaughnessy and Rigan falsely arrested Van Allen and maliciously prosecuted him. (*Id.* ¶¶ 12-16.) Plaintiff brings excessive force, false arrest, malicious prosecution, assault, and battery claims.

## LEGAL STANDARD

### I.  Admissibility of Expert Testimony

The admissibility of expert testimony is governed by Federal Rule of Evidence ("Rule") 702 and the Supreme Court's opinion in *Daubert*. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. Nov. 18, 2011). "The Federal Rules of Evidence define an 'expert' as a person who possesses 'specialized knowledge' due to his 'skill, experience, training, or education' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Banister v. Burton*, 636 F.3d 828, 831 (7th Cir. 2011) (quoting Fed. R. Evid. 702). District courts must determine whether expert testimony is both relevant and reliable. *Bielskis*, 663 F.3d at 893. To do so, courts must "ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting Fed. R. Evid. 702); *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011) ("[E]xpert testimony is admissible if (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case."). "The proponent of the expert bears the burden of

demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

As the Seventh Circuit instructs, "'[t]he focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate.'" *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). In assessing whether an expert's testimony is reliable, *Daubert* lists a number of considerations — including testing, peer review, error rates, and acceptability in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. The 2000 Advisory Committee's Notes to Rule 702 suggest additional criteria for gauging expert reliability, including whether: (1) "maintenance standards and controls" exist; (2) the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation," or was developed "expressly for purposes of testifying"; (3) "the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; (4) "the expert has adequately accounted for obvious alternative explanations"; (5) "the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and (6) "the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give." *See Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 534-35 (7th Cir. 2005) (citations omitted), *vacated in part on other grounds*, 448 F.3d 936 (7th Cir. 2000) (quoting Fed. R. Evid. 702 advisory committee's note (2000)); s*ee also Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field."

3

*Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

The Supreme Court, however, has clearly stated that "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141, 119 S. Ct. 1167 (internal quotation omitted). This is especially true when the expert's opinions are non-scientific in nature and do not follow traditional scientific testing. "[T]he test for reliability for nonscientific experts is 'flexible' and . . . *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999) (quoting *Kumho Tire*, 536 U.S. at 141). "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (emphasis in original); *see also Ortiz*, 656 F.3d at 536.

An expert may be qualified to render opinions based on experience alone. "In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Advisory Committee Notes to Rule 702. The Seventh Circuit has stated repeatedly that "genuine expertise may be based on experience or training." *United States v. Conn,* 297 F.3d 548, 556 (7th Cir. 2002) (quoting *Tyus v. Urban Search Mgmt.,* 102 F.3d 256, 263 (7th Cir. 1996)). "[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Trustees of Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall and Decorating, Inc.*, 493 F.3d 782, 787-88 (7th Cir. 2007) (citations and quotations

omitted); *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (emphasis in original) (quoting Fed. R. Evid. 702). As such, courts "consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Trustees of Chicago*, 493 F.3d at 788 (quoting *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000)).

**II.     Motion in Limine**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In limine rulings avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Trial courts have broad discretion in ruling on evidentiary issues before trial. *See United States v. Chambers,* 642 F.3d 588, 594 (7th Cir. 2011). Regardless of the Court's initial ruling on a motion in limine, the Court may adjust its ruling during the course of trial. *See Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006). The Court will only grant a motion in limine when the evidence is clearly inadmissable for any purpose. *See Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997); *Thakore v. Universal Mach. Co. of Pottstown, Inc.,* 670 F. Supp.2d 705, 714 (N.D. Ill. 2009). The moving party bears the burden of establishing that the evidence is not admissible for any purpose. *See Mason v. City of Chicago,* 631 F. Supp.2d 1052, 1056 (N.D. Ill. 2009).

ANALYSIS

I.      Mr. Ernest's Qualifications and Opinions

Defendants retained Mr. Ernest to examine the physical evidence in this case and to perform a reconstruction of the shooting scene at issue. (R. 93, Ernest Report at 4.) Mr. Ernest graduated from the University of Georgia in 1975 and has received training in forensic ballistics and crime scene reconstruction, including, but not limited to, attending courses in "specialized techniques in firearms identification" and "gunpowder and gunshot residue" at the Federal Bureau of Investigation ("FBI") Academy. (R. 117-1, Ernest Resume.) He has also attended multiple courses on shooting scene reconstruction, including a crime scene investigation workshop given by the Southwestern Association of Forensic Scientists, and shooting scene reconstruction, trajectory analysis, and wound ballistics workshops given by the Association of Firearm and Tool Mark Examiners. (*Id.*) Mr. Ernest was a Guest Lecturer at the FBI Academy in 1996, where he gave a seminar on shooting scene reconstruction.

Since 2004, Mr. Ernest has served as the Laboratory Director at Alliance Forensics Laboratory, Inc., where he directs daily laboratory operations. From 2000 to 2004, he was a self-employed forensic consultant, specializing in firearms related services for the legal and insurance industries. He offered varied services as a consultant, including those related to firearms identification, shooting scene reconstruction, shooting accident investigations and reconstructions, gun safety and design issues, toolmark examinations, crime scene examinations and reconstructions, general criminalistics related determinations, gunshot residue issues, and distance determination examinations. He has performed work for civil and criminal attorneys, police departments, and district attorney offices. (*Id.*)

Prior to his consulting work, Mr. Ernest served as the Firearms Section Supervisor at the Georgia Bureau of Investigation Crime Laboratory and at the Tarrant County Medical Examiner's District's Criminalistics Laboratories in Fort Worth, Texas. (*Id.*) His work in these roles included, but was not limited to, examinations of shooting scenes, assisting medical examiners with ballistics-related issues, teaching seminars to police, legal, medical and other personnel on firearms-related topics, and testifying in court concerning his examinations. Before that, Mr. Ernest worked for 13 years as a Senior Firearms Examiner at the Georgia Bureau of Investigations Crime Laboratory in Atlanta, Georgia. (*Id.*)

Mr. Ernest renders several opinions in his expert report, but the following five specific opinions are at issue in Plaintiff's motion:

- The "paintball pistol" is "capable of causing severe injury (evisceration of the eye if fired at close range), and it is very similar visually in design to several well known actual firearms which are favored in the criminal community . . . including the Ingram MAC, Uzi, Intratec Tech 9, Claridge Hi-Tec and Calico pistols." (R. 93, Ernest Report at 7.) Mr. Ernest also includes a photograph of the paintball gun as well as photos of the "well known actual firearms which are favored in the criminal community." (*Id.*)

- Van Allen's "right arm was pointed back (or rearwards) towards Officer O'Shaughnessy at the instant that" Officer O'Shaughnessy fired one of his shots at Van Allen. (*Id.* at 8.)

Mr. Ernest's report also contains several photographs of a mannequin, which he offers for "demonstrative or illustrative purposes only." (*Id.* at 9-12.)

**II.     Mr. Ernest's Opinion that the Paintball Gun at Issue in This Case is "Capable of Causing Severe Injury" is Inadmissible**

Plaintiff argues that the Court should exclude Mr. Ernest's opinion that the paintball gun at issue in the case "is capable of causing severe injury" (the "Paintball Gun Opinion") because it is irrelevant, unreliable, is likely to confuse the jury and will cause unfair prejudice.[1] (R. 93 at 3; R. 117 at 2-4.)  As the proponents of the expert, Defendants bear the burden of demonstrating that Mr. Ernest's opinions are admissible under *Daubert*.  *See Lewis*, 561 F.3d at 705. Defendants offer three reasons why the Paintball Gun Opinion is relevant.  First, they argue that it will "help the jury understand what the officer was thinking, that this paintball gun pointed towards them [sic] was capable of severely injuring them [sic], and that it was not a harmless toy water gun."  (R. 101 at 13.)  Second, they contend that it explains to the jury Van Allen's state of mind and motive in allegedly pointing the paintball gun at Officer O'Shaughnessy.  (*Id.*)  Third, they argue that it is relevant to show the jury why Van Allen ran way from the officers.  (*Id.*)

In excessive force cases, the fact-finder must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011).  The "objective reasonableness" standard "requires that a fact finder analyze whether the

---

[1] Plaintiff raised her reliability argument (in addition to several other arguments) for the first time in her reply brief.  Normally, arguments raised for the first time on reply are waived because the opposing party does not have a chance to respond to them.  *See Broaddus v. Shields*, --- F.3d ----, 2011 WL 6396542, at *11 (7th Cir. Dec. 21, 2011) ("[I]t is well established that arguments waived for the first time in a reply brief are waived.").  Because the Court gave Defendants the opportunity to respond to Plaintiff's new arguments in a sur-reply, however, that principle does not apply and the Court will consider the arguments raised in Plaintiff's reply. *See, e.g., Moorehead v. Duetsche Bank AG*, No. 11 C 106, 2011 WL 4496221, at *5 (N.D. Ill. Sept. 26, 2011) (no waiver of arguments raised on reply where Court allowed sur-reply).

officer's actions are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer, and without the benefit of hindsight." *Common*, 661 F.3d at 943. As the Seventh Circuit recently reaffirmed, "when evaluating the reasonableness of an officer's actions, the fact finder must do so with blinders on–viewing the circumstances and facts only as they were known to the officer at the time." *Id.*

A review of Officer O'Shaughnessy's deposition testimony indicates that he believed that Van Allen pointed a black and silver handgun, not a toy gun, at him on the night in question. *See* R. 124-1, O'Shaughnessy Dep. at 64:15-65:1 (Q: "It was your belief that it was a firearm that your partner had concluded that the offender still had in his possession; is that a fair characterization of what you were thinking?" A: "I believe my partner was warning me and letting me know that he was in fact armed; yes." Q: "With a firearm?" A: "Yes" Q: "Firearm, meaning not a toy; correct?" A: "Yes"); 97:2-4 (Q: "Describe what you saw Van Allen pointed at you." A: "A black handgun, black and silver."). It was not until *after* the shooting that the officers learned that the gun in Van Allen's possession at or around the time of the shooting was a paintball gun. As such, whether or not the paintball gun at issue is capable of causing serious injury is irrelevant to what Officer O'Shaughnessy thought at or around the time of the shooting because he did not believe, at that time, that Van Allen had a paintball gun on his person.

Defendants' second relevancy argument–that the Paintball Gun Opinion will explain to the jury that Van Allen pointed the paintball gun at the officers in order to cause severe injury–likewise fails. First, Van Allen's motive in allegedly pointing a paintball gun at Officer O'Shaughnessy is irrelevant to what Officer O'Shaughnessy knew at the time of the shooting.

9

*See Sherrod*, 856 F.2d at 805 ("only those circumstances known and information available to the officer at the time of his action" are relevant in an excessive force case).[2] The Court is also unconvinced by Defendants' final assertion that the Paintball Gun Opinion is relevant to explain to the jury why Van Allen ran away from the officers. Based on the deposition testimony submitted to the Court, it does not appear that the parties dispute that, at some point in the night, Van Allen ran away from the officers. Moreover, Defendant O'Shaughnessy will testify at trial that he believed Van Allen pointed a gun at him, which is sufficient to show why Van Allen ran away from the officers. Therefore, the Paintball Gun Opinion is not necessary for the jury to make such a determination. *See* Fed.R.Evid. 702(a) (expert testimony is relevant if it helps the jury "determine a fact in issue").

The Paintball Gun Opinion also does not meet *Daubert*'s reliability requirement. The sum total of Mr. Ernest's opinion regarding the dangerousness of the paintball gun at issue is stated in half of a sentence: "The paintball pistol itself, which has been described in the case record as a "toy" is capable of causing severe injury (evisceration of the eye if fired at close range). . . ." (R. 93 at 7.)[3] Mr. Ernest does not explain *any* basis for his opinion. *See United States v. Noel*, 581 F.3d 409, 497 (7th Cir. 2009) ("an expert's opinion that lacks proper substantiation is 'worthless'") (citing *Minasian v. Standard Chtd. Bank*, 109 F.3d 1212, 1216

---

[2] The Seventh Circuit in *Sherrod* recognized two exceptions to this general rule, including where the evidence bears on the officer's capacity to observe, remember ,or narrate and where the evidence can be used to impeach a witness by demonstration contradictions in his testimony. *Id.* at 806. Defendants have failed to demonstrate that either of these exceptions apply here.

[3] Plaintiff argues in a footnote in her reply brief that the Court should bar Mr. Ernest from referring to the paintball gun as a "pistol" because such terminology is inaccurate, misleading, and inflammatory. (R. 117 at 4, n.1.) The Court declines to strike such testimony because the term "paintball pistol" is not any more inflammatory than the term "paintball gun."

(7th Cir. 1997)); *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999) ("providing only an ultimate [expert] conclusion with no analysis is meaningless") (citing *Minasian Standard*, 109 F.3d at 1216)). Defendants' argument that Mr. Ernest's "30+ years of experience as a firearms expert" provides a reliable basis for his Paintball Gun Opinion misses the mark. Nowhere in Mr. Ernest's resume or report does he point to any experience working with paintball guns, as opposed to actual firearms. Moreover, even if Mr. Ernest has experience assessing the dangerousness of paintball guns, he has failed to explain how that experience compels his conclusion that paintball guns can cause severe injury. Although an expert may base his opinions on his experience, he must nevertheless explain how the application of his prior experience to the facts of the case compels his conclusion. *See Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, No. 09 C 2513, 2011 WL 4840965, at *3 (N.D. Ill. Oct. 12, 2011); *see also* Fed.R.Evid. 702 Advisory Committee Notes ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."). Because the Paintball Gun Opinion is not sufficiently reliable, it is inadmissible.[4]

### III. Portions of Mr. Ernest's Opinion Regarding the Design of the Paintball Gun, as Well as the Gun Photographs, May Be Admissible

Plaintiff next contends that the Court should exclude Mr. Ernest's opinion that the

---

[4] Because Mr. Ernest's opinion is inadmissible under Rule 702, the Court need not consider Plaintiff's argument under Rule 403. *See, e.g.*, *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 2550623, at *6 (N.D. Ill. June 27, 2011) (declining to consider alternative ground for exclusion after determining that exclusion of testimony was appropriate on another ground).

11

paintball gun at issue "is very similar visually in design to several well known actual firearms which are favored in the criminal community . . . including the Ingram MAC, Uzi, Intratec Tech 9, Claridge Hi-Tec and Calico pistols" (the "Gun Design Opinion") because that opinion is irrelevant, unreliable, and will invade the province of the jury. (R. 93 at 3; R. 117 at 4.) Relatedly, Plaintiff argues that the Court should exclude the two photographs found on page 7 of Mr. Ernest's report–one of the paintball gun at issue in this case and the other of several "well-known" firearms (collectively, the "Gun Photographs")–because they are irrelevant, unreliable, and likely to confuse the jury and cause unfair prejudice. (R. 93 at 3; R. 117 at 4.) According to Plaintiff, Mr. Ernest has articulated no basis for his conclusion that the weapons depicted in the firearm photograph (#1-B) are "favored in the criminal community" and he has not defined the "criminal community" to which he refers. (R. 117 at 4.) She also contends that Mr. Ernest's opinion impermissibly invades the province of the jury, which is capable of viewing either accurate photographs or the actual guns themselves and drawing their own conclusions as to the similarity of the firearms and the paintball gun. (*Id.* at 4-5.)

Defendants argue that the Design Opinion and the Gun Photographs are "necessary for the jury to understand what was going through the police officers' minds when they saw the paintball gun" and therefore will help the jury to assess the reasonableness of the officers' actions. (R. 101 at 14.) They posit that without seeing the photographs, the jury may not understand that the black and silver paintball gun, which they contend Plaintiff will refer to as a "toy gun" throughout trial, indeed looks like a deadly weapon, especially in the dark. (*Id*.)

The portion of the Gun Design Opinion regarding whether certain firearms are "favored in the criminal community" is inadmissible. Mr. Ernest offers no basis, let alone a reliable one, for this portion of the opinion, nor does he define the "criminal community" to which he refers. *See Noel*, 581 F.3d at 497; *Huey*, 165 F.3d at 1087. His vast experience with firearms does not, on its own, render this opinion admissible; rather, he must explain how his experience compels his conclusion that the specified firearms are favored in the criminal community, which he has failed to do. *See Crawford Supply*, 2011 WL 4840965 at *3 ("An expert witness cannot merely present his qualifications alongside his opinion; he must explain why the application of his prior experience to the facts at hand compel[s] his final conclusions.") (citing *Metavante,* 619 F.3d at 761)).

With respect to the remainder of the Gun Design Opinion and the Gun Photographs, the Court agrees with Defendants that such testimony is relevant. Whether the paintball gun looks like certain actual firearms is directly relevant to whether Officer O'Shaughnessy acted reasonably in light of the facts and circumstances known to him at the time. *Graham*, 490 U.S. at 397. Moreover, if Mr. Ernest is able to opine as to the specific features of the guns which make them appear so similar, as Defendants argue, the jury would benefit from hearing expert testimony on this issue because the average juror is not familiar with the specific details of the design of the Ingram MAC, Uzi, Intratec Tech 9, Claridge Hi-Tec and Calico pistols.

The parties, however, have failed to provide the Court with sufficient information to allow the Court to make an admissibility determination regarding the remainder of the Gun Design Opinion and the Gun Photographs. Defendants argue that Mr. Ernest's testimony will help "explain the features of the guns which make them appear so similar," but Mr. Ernest offers

13

no such explanation in his report. Moreover, the gun photos in Mr. Ernest's report submitted to the Court do not assist in the Court's determination because they are very dark photocopies in which it is virtually impossible to see the details of the guns or their designs. Compounding this difficulty is the fact that neither party deposed Mr. Ernest, and therefore the Court is confined to the four corners of Mr. Ernest's report and resume in determining whether to admit this opinion.

Accordingly, the Court orders a limited hearing regarding the portion of Mr. Ernest's Gun Design Opinion that the Court has not already stricken, as well as the Gun Photographs, so that the Court can further explore the basis for, and the specifics of, this opinion. If Mr. Ernest is only able to offer a "bottom line" that the paintball gun looks similar to firearms he identifies, his opinion will not be helpful to the jury. *See United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) (noting that "[u]nless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403" and that "[c]onclusory statements without any explanation why the expert can contribute to the jury's understanding of the subject are also subject to exclusion") (citation omitted); *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir. 2004) (affirming district court's exclusion of an expert's opinion based upon a videotape because "the videotape could be played for the jury and entered into evidence, and consequently, jurors could make a determination for themselves . . . . Based upon this independent assessment . . . the jury could then draw [its own] inferences . . . and expert testimony would be of no help."); *Aponte v. City of Chicago*, No. 09-CV-8082, 2011 WL 1838773 (N.D. Ill. May 12, 2011) ("[E]xpert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony."). If,

however, Mr. Ernest is able to apply his expertise to the specific facts of this case and use his expertise to explain how the paintball gun is designed in the same way as actual firearms, the jury will benefit from his testimony.

**IV.     Mr. Ernest's Opinion That Van Allen's Arm Was Pointed Backwards in the Direction of Officer O'Shaughnessy When One of the Shots Hit Van Allen Is Admissible**

Plaintiff also seeks to exclude Mr. Ernest's opinion that Van Allen's arm was pointed backwards in the direction of O'Shaughnessy when one of the shots O'Shaughnessy fired struck Van Allen's arm (the "Van Allen Opinion") on the basis that it is unreliable, speculative, and will not assist the jury because it does not corroborate Officer O'Shaughnessy's testimony. (R. 93 at 4; R. 117 at 5.) Specifically, Plaintiff asserts that Officer O'Shaughnessy "cannot identify where he was in relation to Van Allen when Van Allen is said to have pointed the paintball gun at him," and therefore, Mr. Ernest should not be allowed to testify that Van Allen's arm was pointed rearwards in the direction of Officer O'Shaughnessy. (*Id.*) Plaintiff further argues that the Van Allen Opinion is unreliable because Mr. Ernest admits that he does not know the order in which the bullets hit Van Allen, and therefore he has no idea whether any movement of Van Allen's arm was voluntary or in response to being shot. (*Id.*)

Defendants respond that as a reconstruction expert, Mr. Ernest "does not need to agree or corroborate the defendant's statement as to what happened." (R. 101 at 16.) They further argue that the Van Allen Opinion is based on facts and reconstruction science and is therefore not speculative. (*Id.*)

15

The Court agrees with Defendants that Mr. Ernest's Van Allen Opinion is not inadmissible merely because it does not mirror Officer O'Shaughnessy's version of what happened on the night in question.[5] Plaintiff is correct that expert testimony must be "factually linked" to the case in order to survive a *Daubert* challenge, *see United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007), but a review of Mr. Ernest's report indicates that his opinion is indeed factually linked to this case. Specifically, Mr. Ernest's Van Allen opinion is based on, among other things, his review and examination of the black hooded jacket that Van Allen wore on the night of the shooting (and the positioning of the bullet holes in that jacket) as well as the photographs and x-rays of Van Allen's bullet wounds. *See* R. 93, Ernest Report at 8. Moreover, Mr. Ernest considered and rejected alternative possibilities of the positioning of Van Allen's arm. *See* 2000 Advisory Committee Notes to Fed.R.Evid. 702 (one of the bases for gauging the reliability of an expert opinion is whether "the expert has adequately accounted for obvious alternative explanations").[6]

As Plaintiff notes, Mr. Ernest freely admits that he could not determine the order in which the bullets hit Van Allen, but this concession does not doom Mr. Ernest's opinion. Rather, Plaintiff is free to explore this concession, as well as any inconsistencies between Mr. Ernest's Van Allen Opinion and other witnesses' testimony, through vigorous cross examination

---

[5] It does not appear from the limited deposition testimony the parties submitted to the Court that Mr. Ernest's opinion contradicts Officer O'Shaughnessy's testimony. If it does, however, that raises a problem for Defendants, not the Plaintiff.

[6] Mr. Ernest further explained in his report that his "examination and laboratory testing conducted in conjunction with this case is performed in accordance with standard practices in the field using protocols which are used in forensic laboratories across the country." (*Id.* at 13.) Additionally, the laboratory where he works is an ASCLD-LAB (American Society of Crime Laboratory Directors - Laboratory Accreditation Board) accredited laboratory, and adheres to standard testing protocols." (*Id.*)

at trial.

See *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Metavante*, 619 F.3d at 762 ("[d]etermination on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross-examination") (quoting *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010)).

V.  **Mr. Ernest May Use the Mannequin in His Testimony Regarding Bullet Trajectory**

Finally, Plaintiff seeks to exclude, pursuant to Rules 702, 402 and 403, "all evidence referencing or relating to the mannequin shown in Ernest's Report" on the ground that Mr. Ernest is not qualified to render opinions regarding bullet trajectory and that the mannequin is irrelevant, highly prejudicial and grossly misleading.[7] (R. 117 at 6-7.) Plaintiff complains that the mannequin's arm does not replicate the size of Van Allen's arm and that because Mr. Ernest cannot determine the position of Van Allen's gun at the time the first shot was fired, the trajectory analysis and the use of the mannequin are unreliable and likely to confuse the jury. Plaintiff also points out that the photo of the mannequin seems to show that the mannequin's arm is facing toward the side, and not towards the back as indicated in Mr. Ernest's report. Moreover, Plaintiff argues that using a standstill mannequin is inappropriate because Officer O'Shaughnessy testified that Van Allen was running at the time he was shot. Defendants

---

[7] As discussed in Section II(C) of this Order, Mr. Ernest sets forth a reliable basis for his trajectory opinions in his report, and he based his findings on a review of the "background documentation provided [to him], the physical evidence and the testing" he performed. *See* R. 93, Ernest Report at 13. As discussed previously, Plaintiff's argument that Mr. Ernest's opinions are unreliable because they do not corroborate Officer O'Shaughnessy's recollection of the events is unpersuasive, and Plaintiff is free to cross examine Mr. Ernest about that fact at trial.

respond that Mr. Ernest's use of the mannequin is for "demonstrative use–to put Van Allen's clothing on it to show the probable positioning of his body, and the trajectory of the bullets." (R. 101 at 16.) Defendants maintain that the mannequin will not confuse the jury and will indeed assist it in understanding the context of Mr. Ernest's testimony.

A simple review of Mr. Ernest's resume demonstrates that Plaintiff's argument that Mr. Ernest is not qualified to render opinions on bullet trajectory has no merit. In his position as Senior Firearms Examiner at the Georgia Bureau of Investigations Crime Laboratory and as Firearms Section Supervisor at the Tarrant County Medical Examiner's District's Criminalistics Laboratories, which collectively encompass twenty-six years of Mr. Ernest's career, his duties included examining shooting scenes, including determining angles, shooting distances, and re-creations of the shooting incidents. (R. 117-1, Ernest Resume.) Moreover, in his role as a self-employed forensic consultant, he performed shooting scene reconstructions and shooting accident investigations and reconstructions. (*Id.*) He also attended a trajectory analysis workshop in 1995, in addition to attending several shooting scene reconstruction workshops and lecturing regarding that topic at the FBI Academy. (*Id.*) Based on Mr. Ernest's training and significant experience in shooting scene reconstruction, which necessarily involves bullet trajectory analysis, he is qualified to render opinions on bullet trajectory in this case.

Having determined that Mr. Ernest's trajectory opinions are admissible under Rule 702, Mr. Ernest is free to use the mannequin and the photographs of the mannequin in the report at trial for demonstrative purposes. Mr. Ernest's trajectory testimony is technical, and the use of the mannequin will assist the jury in understanding it. Plaintiff is free to explore her concerns with the scale of the mannequin and the inconsistencies between the positioning of the

mannequin and Officer O'Shaughnessy's testimony during cross-examination. These issues go to the weight of Mr. Ernest's testimony and thus are more appropriate issues for the jury. Moreover, Plaintiff may use the mannequin at trial to attempt to dispel Mr. Ernest's theory.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Plaintiff's motion to exclude the expert testimony of Mr. Richard Ernest and denies Plaintiff's motion in limine. The Court will hold a limited hearing on March 5, 2012 at 10:00 a.m. regarding the Gun Photographs and the portions of Mr. Ernest's Gun Design Opinion that the Court has not already stricken.

**Date:** January 27, 2012

                                        **ENTERED**

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**